UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

        Plaintiff,

v.                                                 Crim. No. 09-139 (JNE/JJK)
                                                      ORDER

Arthur James Chappell,

        Defendant.

        Arthur Chappell was indicted on May 19, 2009, on one count of sex trafficking of a minor. An attorney was appointed to represent him at no cost because he testified that he was unable to afford counsel.

        The attorney who undertook Mr. Chappell's representation was Caroline Durham. Ms. Durham is employed by the Office of the Federal Public Defender in the District of Minnesota. She has been an attorney since 1990, practiced criminal defense law for 15-16 years, and estimates that she has tried more than 20 criminal cases. Prior to joining the Office of the Federal Public Defender, Ms. Durham was an attorney in private practice.

        On behalf of Mr. Chappell, Ms. Durham filed pretrial motions and represented him in a hearing before the Honorable Jeffrey J. Keyes, United States Magistrate Judge. She filed objections to the magistrate judge's report and recommendation, and ultimately represented Mr. Chappell at a jury trial.

        Trial in this matter was held over three days, beginning on September 13, 2010. On September 15, 2010, the jury returned a guilty verdict. Prior to sentencing, Mr. Chappell requested that Ms. Durham be replaced by other counsel. This Court granted that request. The case was assigned to Thomas Plunkett, a member of the Criminal Justice Act panel. Mr. Chappell declined to be represented by Mr. Plunkett and opted, instead, to hire his own counsel.

1

Privately retained counsel, Arthur Martinez, moved for a new trial and an evidentiary hearing, on the ground of alleged deficiencies in Ms. Durham's representation. For the following reasons, the Court denies Mr. Chappell's motion for a new trial.

If the interest of justice requires, the judgment of a criminal conviction may be vacated and a new trial granted. Fed. R. Crim. P. 33. This is a discretionary decision with the Court. *United States v. Dodd*, 391 F.3d 930, 934 (8th Cir. 2004). Where, as here, relief is sought on the ground of ineffective assistance of counsel, the matter is examined under the familiar framework of *Strickland v. Washington*, 466 U.S. 668 (1984). That is to say, Mr. Chappell must show that his attorney's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced his defense. *Id.* at 687. A finding of prejudice requires the defendant to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different." *Id.* at 694. Judicial review of counsel's performance must be "highly deferential." *Id.* at 689.

The evidence against Mr. Chappell was very strong, and he does not argue that the evidence does not amply support a conclusion that he employed and supervised prostitutes. While his post-hearing memorandum is less than clear, the Court is satisfied that his primary arguments are more technical in nature. First, he argues that the government bore the burden of proving that Mr. Chappell had actual knowledge of the interstate commerce element of the offense. This has been his position since he was first arrested, as evidenced by a motion he filed in June 2009, before he was even transported to Minnesota for his initial appearance. (Docket No. 3) The evidence at the hearing on Mr. Chappell's motion for a new trial, held on January 5, 2011, supports the information that was brought to the Court's attention during trial: Mr. Chappell was frustrated by Ms. Durham's interpretation of the law. As the Court explained

during the trial, the law is clear that the interstate commerce element of the crime does not require actual knowledge by the defendant. *See, e.g.*, *United States v. Evans*, 476 F.3d 1176, 1179 n.2 (11th Cir. 2007) (defendant's conduct "substantially affected interstate commerce" based on his "use of hotels that served interstate travelers and distribution of condoms that traveled in interstate commerce"); *see also United States v. Feola*, 420 U.S. 671, 677 n.9 (1975) ("[T]he existence of the fact that confers federal jurisdiction need not be one in the mind of the actor at the time he perpetrates the act made criminal by the federal statute."). Thus, while Mr. Chappell did not like or agree with the legal advice he received on this point, he can show no deficiency or prejudice on its account.

Notwithstanding her clear and, in this Court's view, accurate understanding of the law, Ms. Durham did provide the jury with evidence that it could have used to conclude that Mr. Chappell lacked knowledge of the interstate commerce element. For example, on direct examination, Carl Ferrer, Vice President of backpage.com, testified that Mr. Chappell's credit card was used to pay for an advertisement on backpage.com. Mr. Ferrer testified that the server for backpage.com is in Arizona. On cross-examination, Ms. Durham asked "how . . . a regular person" would know that the server was in Arizona. Mr. Ferrer agreed that "it would be difficult for a regular person to know that." (Trial Tr. 118) Similarly, in her opening statement, Ms. Durham asked the jury to consider whether Mr. Chappell knew "that what was happening was a federal offense" and whether he "knowingly affect[ed] interstate commerce." (Trial Tr. 103-04)

The second ground of ineffectiveness urged by Mr. Chappell has to do with his knowledge that one of his prostitutes was under the age of 18. On this, the Court required the government to prove beyond a reasonable doubt:

> [F]irst, that the Defendant knowingly recruited, enticed, harbored, transported, provided, obtained or maintained, by any means Cheryl Buell;

3

>Two that the Defendant did so knowing or in reckless disregard of the fact that means of force, threats of force, fraud, coercion, or any combination of such means would be used to cause her to engage in a commercial sex act.
>
>Or that she had not attained the age of 18 years and would be caused to engage in a commercial sex act.
>
>. . . .
>
>If the Government proves beyond a reasonable doubt that the defendant had a reasonable opportunity to observe the person recruited, enticed, harbored, transported, provided, obtained, or maintained, then the Government does not have to prove that the defendant knew that the person had not attained the age of 18 years.

(Trial Tr. 421-23) Again, the evidence now before the Court is that Mr. Chappell did not like the legal advice that he received from Ms. Durham on the point of knowledge of age. She, however, was right and he was wrong. And again, Ms. Durham, in spite of her understanding, presented argument on the point anyway. Indeed, in her closing argument, Ms. Durham asked the jury, "What about age? Again, where does this information come from? Cheryl Buell, Adrien Weisman. We have the ability and resources of the U.S. government as we stand in this courtroom. . . . And yet it is the word of Cheryl Buell that Detective Broen took to say, 'I'm 17.'" (Trial Tr. 396-98) Ms. Durham argued effectively that Ms. Buell may have lied about her age: "She's got ecstasy in her purse. She lies about it. She knows she could be in trouble with criminal activity and she says, 'I'm 17.' She's savvy. She's been on the streets." Ms. Durham also pointed to the absence of any concrete evidence in the record as to the victim's age, noting the lack of official identification for Ms. Buell and the ease with which it could have been obtained. At the post-trial hearing, Ms. Durham testified that her trial strategy was to "show that the witnesses were lying. . . . The goal was to address the particular pieces of the jury instructions that [the government] was required to prove and try and undo those. What age was Cheryl Buell at the time this went on? Did Mr. Chappell know whether in fact she was underage

4

at the time?" (Hr'g Tr. 45) That Ms. Durham's approach differed from the one requested by Mr. Chappell does not make it ineffective. *Cf. Wing v. Sargent*, 940 F.2d 1189, 1191-92 (8th Cir. 1991).

There was ample evidence to prove that the complaining witness, Cheryl Buell, was under the age of 18: Cheryl Buell testified that Mr. Chappell would frequently pick her up at high school, where she attended eleventh grade; that she was 17 at the time; and that she told the investigative detective that Mr. Chappell knew she was 17 during her very first interview with the detective. (Trial Tr. 264-65, 276, 289) Adrien Weisman, a grade school friend of Ms. Buell who worked for Mr. Chappell at the same time as Ms. Buell, also testified that Ms. Buell was 17. (Trial Tr. 210, 221) There was also evidence at trial that Mr. Chappell, in addition to knowing Ms. Buell was in high school, was actually told of her age: Ms. Weisman testified that she was present during a conversation when Mr. Chappell was told of Ms. Buell's age and Ms. Buell testified that she told Mr. Chappell she was 17. (Trial Tr. 211, 276)

Moreover, at the post-trial hearing, Mr. Chappell did not offer any evidence that he did not know Ms. Buell's age. One witness whom Mr. Chappell asserts should have been called to testify at trial, Ravael Nelson, told the defense investigator in a pretrial interview that she in fact had told Mr. Chappell that Ms. Buell was 17. (Hr'g Tr. 51) Indeed, Mr. Chappell has not identified any evidence that shows the outcome with respect to the element of age would have been different if different tactics had been used by his counsel.

Relatedly, Mr. Chappell does not give his attorney credit for persuading the jury not to find that he achieved the prostitute's cooperation through force, violence, or intimidation as indicated on the verdict form. (Docket No. 87) Ms. Durham's good work became evident at the post-trial hearing. Mr. Chappell claimed that he was harmed by the decision not to call Ms.

5

Nelson because she would have testified to several points which Mr. Chappell believes would have been favorable to him: Ms. Buell and Ms. Weisman lied about their age; Ms. Nelson attended school when she was over 18; and Ms. Buell had not been at Mr. Chappell's residence from June 20 to July 2. (Hr'g Tr. 31)  But the evidence showed that Ms. Nelson had been contacted by the defense and that she would have testified that Mr. Chappell had beaten her with a paddle, a point that was corroborated with other evidence that was not brought to the Court's attention until the post-trial hearing.  (Hr'g Tr. 52)  In investigative interviews with the defense team, Ms. Nelson also described Mr. Chappell as "a fucking criminal, a suave criminal, and not a good person."  (Hr'g Tr. 54)  It is clear to the Court that if Mr. Chappell had had his way, he would most likely have received a finding from the jury that he engaged in force, violence, and intimidation.  Indeed, another witness that Mr. Chappell claims Ms. Durham should have called, Felecia Page, also indicated to the defense investigator that she would testify about Mr. Chappell's use of "discipline," including his use of the paddle on Ms. Nelson.  (Hr'g Tr. 53)  Further, Ms. Durham testified that Ms. Page had indicated she would "bury" Mr. Chappell if called to testify and that Ms. Durham had reason to believe that Ms. Page herself may have been underage when she worked for Mr. Chappell.  (Hr'g Tr. 53)

    Mr. Chappell's assertions that his representation was flawed because of Ms. Durham's refusal to call other witnesses are similarly unpersuasive.  For example, Mr. Chappell complains that Ms. Durham should have called Heather Bergeron because she would have testified that Mr. Chappell had told her that he had seen identification belonging to Ms. Buell, stating that she was above 18 years of age.  However, Ms. Durham testified that Ms. Bergeron would have testified to the fact that she worked for Mr. Chappell as a prostitute, that she had observed Ms. Buell at Mr. Chappell's house, and that she travelled across state lines at the direction of Mr. Chappell to

work as a prostitute. (Hr'g Tr. 55) "The decision not to call a witness is a virtually unchallengeable decision of trial strategy." *United States v. Staples*, 410 F.3d 484, 488 (8th Cir. 2005) (citations omitted). In this case, counsel testified that her decision not to call specific witnesses was based upon a thorough defense investigation and her perception that their testimony would be harmful to Mr. Chappell's case and inconsistent with her own trial strategy. (Hr'g Tr. 48, 55 57) Further, Mr. Chappell failed to call a single witness or otherwise submit evidence, beyond his own testimony, of how these witnesses would have testified if called. Mr. Chappell's "speculation as to how the [witnesses] would have testified fails to meet his burden of proof that counsel's assistance was ineffective." *Wing*, 940 F.2d at 1190.

None of Mr. Chappell's additional assertions of deficiency and prejudice are availing. He claims that Ms. Durham did not sufficiently establish that two of the witnesses were "liars." The Court was struck with Ms. Durham's skill in cross-examination when she led both witnesses essentially to admit that they were liars. Ms. Durham's questions caused Ms. Buell to admit to at least three different instances in the past when she had lied and that her job as a prostitute required her "to act." And though Ms. Buell initially denied being "good at it," Ms. Buell ultimately agreed to the fact that if she wasn't "acting the way [her customers] wanted, they wouldn't have called back," essentially admitting that she was a good actress. (Trial Tr. 291) During her questioning of Ms. Weisman, Ms. Durham elicited Ms. Weisman's admission to having told several different lies in the past as well Ms. Weisman's agreement that "lies come easy" to her. (Trial Tr. 229-33)

Mr. Chappell disagrees with Ms. Durham's strategic decision not to revisit this line of questioning on re-cross. He argues both that the witnesses should have been questioned further about their willingness to lie about their age and that defense investigator Tim Trebil should have

7

been called to testify about the extent of their lies.  Mr. Chappell offers no expert opinion, or other evidence, suggesting that his strategy would have been a winning one:  indeed, having elicited that sort of admission from a witness, most savvy lawyers—in this Court's experience—would leave good enough alone and not give a witness the chance to explain or retract such damaging admissions.  *Cf. United States v. Watkins*, 486 F.3d 458, 466 (8th 2007) ("'[I]t is very difficult to show the trial outcome would have been different had specific questions been asked on cross examination.'").  In light of the admissions already made by the witnesses, any testimony by Mr. Trebil on this point would have been cumulative.  *See id.*

      Mr. Chappell also argues that Ms. Durham was ineffective for failing to ask certain questions during cross-examination of the government's witnesses.  Specifically, he sought questions on whether Ms. Weisman was attending college during the time of the offense; whether the cell phones found in his apartment and the number included in an advertisement for his prostitution business were functional; Detective Broen's experience as an investigator; what verification Detective Broen had that prostitution actually took place in the hotel room; how the individual prostitutes knew money they earned as prostitutes went to the Defendant; and about Ms. Buell's initial difficulty identifying Mr. Chappell at trial.  (Hr'g Tr. 9, 16-18, 26)  The Court does not see, and Mr. Chappell has not demonstrated, how asking these questions would have changed the outcome of the trial.  Ms. Durham engaged in substantial cross-examination of each witness called by the government. The results of different or further cross-examination of the witnesses are speculative at best.  *See Becker v. Luebbers*, 578 F.3d 907, 917 (8th Cir. 2009); *see also Watkins*, 486 F.3d at 466.

      Mr. Chappell also maintains that a forensic scientist with the Minnesota Bureau of Criminal Apprehension, called to identify a substance found in Mr. Chappell's home as ecstasy,

should have been asked about the "effects of ecstasy." But nothing in the record—the transcript of her direct testimony or any proffered expert report—supports the conclusion that the forensic scientist from the Minnesota Bureau of Criminal Apprehension was qualified to testify as to the "effects" of ecstasy. Mr. Chappell himself testified that he wanted to have his lawyer ask the question because she "maybe" had relevant experience on which to base an answer. (Hr'g Tr. 37) Alternatively, Mr. Chappell argues that Ms. Durham should have called an "ecstasy expert" specifically for this purpose. Prejudice on this point is not established. *See Rodela-Aguilar v. United States*, 596 F.3d 457, 462 (8th Cir. 2010) ("A claim of ineffective assistance based on the failure to consult and call an expert requires 'evidence of what a scientific expert would have stated' at trial in order to establish *Strickland* prejudice."). Nothing said at the hearing or in his post-hearing memorandum indicates why expert testimony of the type sought might have influenced the outcome of the trial. Similarly, Mr. Chappell has not demonstrated what would have been achieved by calling an expert about the "lifestyle and effects of prostitution." He had ample opportunity to put flesh on the bones of that argument at the evidentiary hearing but did not.

Mr. Chappell's post-hearing memorandum contains several pages of argument, especially at pages 10 through 13 that are all but incomprehensible. The Court makes the following general findings, in the hope that they are responsive to the assertions.

Ms. Durham diligently investigated the case with the help of an experienced and capable investigator. Together, they tracked down potential witnesses. The witnesses were not friendly to Mr. Chappell and each had testimony that might well have harmed his cause. While Ms. Durham was not available by telephone each time Mr. Chappell called her from the jail, she and Mr. Trebil had extended meetings with Mr. Chappell in preparation for trial. Mr. Chappell

testified that Mr. Trebil visited Mr. Chappell seven or eight times in the month leading up to the trial. (Hr'g Tr. 28) Both Mr. Chappell and Ms. Durham testified that Ms. Durham came to the jail at least six or seven times in the months leading up to trial. (Hr'g Tr. 27, 42) Specifically, in the month before trial, Mr. Chappell testified that Ms. Durham visited five times; Ms. Durham testified that she visited six or seven times, and that they had several telephone conversations. The Court credits Ms. Durham's testimony. Mr. Chappell maintained in his testimony at the hearing (but not in his memorandum, as far as the Court can discern) that Ms. Durham refused to discuss his defense during those meetings, but the Court does not accept that as true. The Court can imagine that Mr. Chappell, who is intelligent and fixedly attached to his opinion of the state of the law with respect to interstate commerce and age, did not manage to persuade Ms. Durham of his view and that he was frustrated by that. The Court cannot imagine, especially given Ms. Durham's fine performance at trial, that the meetings were not about Mr. Chappell's defense. Further, Mr. Chappell's testimony about Ms. Durham's supposed refusal to discuss his defense was inconsistent. (Hr'g Tr. 6, 9-12, 22)

Mr. Chappell has not demonstrated that his counsel's performance was deficient. Nor has he demonstrated anything that he now claims should have been done at trial would have affected the outcome. For the reasons that have been set forth at trial, in this Order, and in the government's post-hearing memorandum, the Court denies Mr. Chappell's motion.

Finally, the Court notes that Mr. Chappell also submitted a separate motion for a new trial. This motion alleges that 18 U.S.C. § 1951(c) (2009) is unconstitutional. Mr. Chappell cites no authority for this proposition and provides no explanation in support of his motion. At the post-trial hearing, scheduled to address both motions, neither Mr. Chappell nor his counsel made

mention of this argument.  Moreover, if the statute were indeed unconstitutional it would hardly be sensible to order a new trial.  The Court denies the motion.

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Mr. Chappell's Post Trial Motion for a New Trial [Docket Nos. 113, 114, 121] is DENIED.

Dated:  February 10, 2011

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge
